IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHERESE FRANKLIN,<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | MEMORANDUM DECISION<br>and REPORT AND RECOMMENDATION<br><br>Case No: 2:07-cv-615 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

Plaintiff Cherese Franklin seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act.[1] Under 28 U.S.C. § 636(b)(1)(B), District Judge Ted Stewart referred[2] this case to the magistrate judge for a report and recommendation on all dispositive issues.

**Background**

Plaintiff Cherese Franklin suffered a back injury when lifting a heavy typewriter while working as a receptionist at Cottonwood Hospital in May 1982. She was diagnosed with a herniated disc at L4,5 and underwent back surgery to correct the problem on June 20, 1982.[3] In the months following surgery, Franklin was re-hospitalized twice to undergo traction.[4] Later, she

---

[1] 42 U.S.C. §§ 401-434.

[2] Order of Reference, docket no. 8, filed 11/29/2007.

[3] R. 170.

[4] *Id.*

began to experience extreme pain in her lower back and legs, which became progressively severe.[5] She received epidural injections and caudal blocks to treat the pain after more conservative measures became ineffective.[6] In January 1985, Franklin re-injured her back in a slip and fall accident while working part-time at the hospital.[7] Franklin has been unable to return to full-time employment since the original injury.

Franklin first filed an application for Disability Insurance Benefits (DIB) on January 31, 1991.[8] This claim was initially denied, upon reconsideration, and in an Administrative Law Judge's (ALJ) decision[9] dated January 31, 1992.[10] In August 1996, Franklin was notified[11] that she was permitted to further pursue her claim as a class member under *Adamson v. Chater,*[12] and she then filed a new DIB application in March 2002,[13] which was initially denied.[14]

---

[5] R. 137.

[6] *Id.*

[7] R. 169.

[8] R. 16.

[9] This original decision is not contained in the administrative record filed in this case.

[10] R. 16.

[11] R. 74.

[12] Hearings, Appeals and Litigation Law Manual (HALLEX) I-5-4-55.  HALLEX I-5-4-55 sets out the procedures to implement the stipulated settlement reached in Adamson's class action alleging that the Agency failed to follow Tenth Circuit case law regarding the weight that should be given to the reports of treating physicians in disability cases.  *See Adamson v. Chater,* Civil Action No. 84-S-2024 (D. Colo. Dec. 21, 1995) (final judgment approving stipulation of class members and procedures to reevaluated claims previously denied).

[13] R. 75-78.

[14] R. 57-58.

After a timely request, Franklin appeared for a hearing before the ALJ in March 2003.[15] In July 2003, the ALJ issued a decision finding that Franklin was not disabled and denied benefits.[16] The Appeals Council accepted Franklin's request for review, and in August 2004, it vacated the ALJ's decision and remanded the case for the ALJ to "give consideration to the treating source opinions of Dr. Goka."[17] The ALJ held a remand hearing in January 2005,[18] and in decision dated May 17, 2005,[19] the ALJ again found that Franklin was not disabled and denied benefits. The Appeals Council denied Franklin's request for review in June 2007,[20] making the ALJ's decision the Commissioner's final decision for judicial review.[21]

## Analysis

### 1. Remand Order and Treating Physicians' Opinions

Franklin argues that the ALJ did not follow the Appeals Council's order on remand to properly consider the treating source opinion of Richard Goka, M.D.,[22] and failed to give proper weight to the treating physicians. The Appeals Council noted that the ALJ needed to evaluate Dr. Goka's opinions expressed in exhibit B9, along with the additional information that had been

---

[15] R. 438-94.

[16] R. 38-50.

[17] R. 393.

[18] R. 495-526.

[19] R. 14-27.

[20] R. 4-6.

[21] 20 C.F.R. § 404.981.

[22] R. 393.

submitted with the request for review.[23] Specifically, the Appeals Council directed the ALJ to:

> Give consideration to the treating source opinions of Dr. Goka pursuant to the provisions of the Adamson stipulation and HALLEX I-5-4-55, 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinions (20 CFR 404.1512).[24]

In his Decision dated May 17, 2005, the ALJ reviewed Dr. Goka's progress notes from Exhibit B-9 pg. 15 as directed by the Appeals Council, and stated that he did not accept the opinion of treating physician Richard Goka, M.D., claiming that it was unsupported by the record or clinical notes.[25]

It is well settled that an ALJ reviewing the opinions of treating sources must engage in a sequential analysis.[26] First, the ALJ must consider whether the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with other substantial evidence in the record.[27] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[28]

But even if it is determined that the opinion is not entitled to controlling weight, that does not mean that the opinion should be rejected.

---

[23] *Id.*

[24] *Id.*

[25] R. 23.

[26] *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

[27] *Id.*; Social Security Ruling (SSR) 96-2p; 20 C.F.R. § 404.1527(d).

[28] *Watkins,* 350 F.3d at 1300.

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.[29]

The regulatory factors that must be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[30]

Therefore, the ALJ's decision must show that these factors were considered in calculating the weight of the opinion and provide "good reasons" for the weight ultimately assigned to the opinion.[31]

In this case, the ALJ's analysis is insufficient under the process described above. The ALJ's complete analysis of Dr. Goka's opinion states:

> In this case, the undersigned ALJ is not accepting the opinion of treating physician Richard Goka, M.D., because the opinion given on December 16, 1985 that claimant was unable to work and would be unemployable for the future is not supported by the

---

[29] *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4).

[30] *Id.* at 1301 (quoting *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

[31] *Watkins*, 350 F.3d at 1300 -01; 20 C.F.R. § 404.1527(d)(2).

> record or the clinical notes. (see Ex. B-9, pg. 15) This is especially
> true in light of the fact that Dr. Goka had not seen the claimant
> since June 1985 before making this statement and did not see her
> again for almost a whole year on November 25, 1986. (Exhibit(s)
> B-9, pgs, 14 & 16)  As well, the undersigned ALJ is not accepting
> the opinion of Dr. Goka given on June 3, 2004, whereupon, after
> being asked to comment on claimant's condition some 15 years
> prior, an almost impossible task, he opined that in 1989 claimant
> would have been classified as being employable in a less than
> sedentary environment and unable to work an 8-hour workday.
> (see Ex. B-19) The undersigned finds Dr. Goka's treatment to be
> too remote for him to go back and opine without substantial
> support and detail, and citation to medical reports.  He cites to no
> medical records, and, in fact, did not make a complete review of
> the claimant's entire chart, having what appears to be only a few
> records before him.  He obviously does not remember the big gaps
> of time for this particular time period, as is noted above in the
> description of the medical evidence - and he appears to be lumping
> everything together and making a blanket statement.  For these
> reasons, the opinion of Dr. Goka is not entitled to controlling
> weight, and is not accepted.[32]

In this case, the ALJ did not give Dr. Goka's opinion controlling weight, finding that the opinion was unsupported by the record or the clinical notes.[33]  Yet, the ALJ failed to explain what inconsistencies in Dr. Goka's treatment notes and the record would discredit the physician's opinion.  Additionally, the ALJ failed to cite any evidence from the record or from any doctor that contradicted the physician's conclusions.  Because it appears, after a careful review of the record, that Dr. Goka's opinion is not unsupported or inconsistent with other substantial evidence,  his opinion was indeed entitled to controlling weight.

If, for some reason the ALJ actually found evidence that the opinion was not entitled to

---

[32]R. 23.

[33]*Id*.

controlling weight, he could assign the opinion lesser weight, or completely disregard it, only after considering the pertinent factors, and providing "good reasons" for the weight ultimately assigned to the opinion.[34] "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."[35] Here, the ALJ did not consider all the necessary factors before disregarding Dr. Goka's opinion. In fact, the only factor that the ALJ considered was the frequency of examination for about a year during the entire treatment relationship. The ALJ stated that Dr. Goka's observations in December 1985 were not supported by the record because he had not seen her since June of 1985, and, "did not see her again for almost a whole year on November 25, 1986."[36] This reason is not enough to completely reject the treating physician's opinion in this matter. Other pertinent factors should have been considered, including that: Dr. Goka was Franklin's treating physician from June 1984 until February 1989;[37] he is a specialist in Physical Medicine & Rehabilitation and Pain Management;[38] his opinion is supported by relevant evidence;[39] the opinion is consistent with the record as a whole;[40] and gaps

---

[34] *Watkins*, 350 F.3d at 1301; 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* (internal quotations and citations omitted).

[36] R. 23.

[37] R. 391.

[38] *Id.*

[39] R. 127-34, 141-46, 274-390 (Dr. Fogg's medical records); R. 135-39 (Dr. Hood's medical records); R. 150-71 (Dr. Goka's medical records); R. 99-102; 238-41 (stipulation of total disability); R. 247-72 (Dr. Kimball's medical records).

[40] R. 127-34, 141-46, 274-390 (Dr. Fogg's medical records); R. 135-39 (Dr. Hood's medical records); R. 150-71 (Dr. Goka's medical records); R. 99-102; 238-41 (stipulation of total disability); R. 247-72 (Dr. Kimball's medical records).

in visits could be explained by Dr. Goka referring Franklin to other specialists and insurance denials.[41]  This type of information should have been included in the ALJ's analysis.

The ALJ then bolsters the complete rejection of Dr. Goka's earlier opinions based upon the June 2004 opinion letter.[42]  The ALJ determined that the letter was not credible because some 15 years had elapsed since the last time he treated Franklin.[43]  The ALJ stated his belief that the time period was too remote for Dr. Goka to go back and offer any valuable opinion without supporting medical evidence.[44]  Instead of speculating what material Dr. Goka did or did not have before he offered this opinion letter,[45] the ALJ had a duty under applicable regulations to obtain additional information from him to develop the record before completely rejecting the opinion. The regulation states:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.[46]

In the letter, Dr. Goka said, "I do not have my entire chart, but do note for the records I reviewed

---

[41] R. 137 ("The insurance company refused to authorize more visits from Dr. Goka . . .").

[42] R. 391.

[43] R. 23.

[44] *Id.*

[45] *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002).

[46] 20 C.F.R. § 404.1512(e)(1) (2006).

that she did have a CT scan that showed scar tissue as a residual to the spine surgery."[47] While Dr. Goka noted that he did not have the *entire* chart, he did review records that he still had before rendering the opinion letter. The ALJ should have requested the clarifying records that came to his attention, or asked Dr. Goka about which records he reviewed for his opinion, in order to comply with his duty to fully develop the record.[48]

More concerning than the ALJ's lack of proper analysis for Dr. Goka, is his *failure to even discuss* the opinions of other medical providers who could also be considered treating physicians. The record contains extensive medical records from: Dr. Reed Fogg, covering a period from 1985 (4 years before Plaintiff's last insured date) through 2001;[49] St. Mark's Hospital covering years 1984 - 1992, with Dr. John England providing epidural and caudal steroid blocks for back pain numerous times over those years;[50] Dr. Gordon Kimball covering years 1998-2003,[51] diagnosing thoracic outlet syndrom[52] and showing Franklin continues to suffer from back pain;[53] Dr. Hood, neurosurgeon, covering years 1985-86 with evaluations and recommendations.[54]

Despite having of all these medical records from examining physicians, the ALJ instead

---

[47] R. 391.

[48] *See White v. Barnhart,* 287 F.3d 903, 908.

[49] R. 127-34, 141-46, 274-390.

[50] R. 173-226.

[51] Notations in other doctor records indicate that Franklin was evaluated by Dr. Kimball in February 1984. However, none of Kimball's records from that time period are contained in the record. *See* R. 170.

[52] R. 271.

[53] R. 247-271.

[54] R. 135-39.

chose to rely on the non-examining state agency physician.[55] The regulations state that the opinion of any examining physician is generally entitled to less weight than that of a treating physician, and the opinion of any agency physician who has never seen the claimant is generally entitled to the least weight of all.[56] "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."[57] In this case, the ALJ failed to follow these rules. The ALJ simply states that his "conclusion is supported by the findings and opinions of State Agency physicians who previously examined the record and reported their opinions at Exhibits B-11."[58] It is clear that the ALJ did not apply the correct legal standards to the treating and examining physicians' opinions before completely relying on the opinion of the nonexamining state agency physician.

### 2. Errors at Step Two and Step Four

Franklin also asserts that the ALJ's Step Two and Step Four determinations are contradicted in the record and not supported by substantial evidence. Although the ALJ finds that Franklin suffered from medically determinable impairments of a back disorder and obesity, he failed to find that these were severe impairments because he felt there was insufficient evidence in the record to indicate that Franklin suffered from these impairments for twelve consecutive months prior to her last insured date in 1989.[59] Yet, there are numerous records from

---

[55]R. 18; 226-36.

[56]*See* 20 C.F.R. § 416.927(d)(1)-(2).

[57]*Hamlin v. Barnhart,* 365 F.3d 1208, 1223 (citing 20 C.F.R. § 416.927(f)(2)(ii)).

[58]R. 18.

[59]*Id*.

treating and/or examining physicians diagnosing Franklin with failed back syndrome for more than twelve months before 1989.[60] In addition, the record contains a stipulated settlement of permanent and total disability with the workers' compensation carrier, that the ALJ did not even discuss in his decision.[61] The ALJ's determination at Step Two is distorted by his complete rejection of the opinions of the treating and/or examining physicians as discussed above. Had the proper weight be given to these opinions, the ALJ's finding that Franklin did not suffer from a sever impairment for sufficient duration under the regulations would be contradicted by substantial record evidence. Consequently, any severe impairments that should have been found at Step Two obviously affected the Step Four analysis when they were not included the RFC analysis.

### 3. Credibility

Next, Franklin contends that the ALJ erred in discrediting her credibility. "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."[62] Specific factors that the adjudicator must consider when assessing the credibility of an individual's statements include:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the

---

[60] *See, e.g.,* R. 129-30 (diagnosed with post-lumbar syndrome, May 22, 185); 164-65 (permanent back damage from surgery and range of motion restrictions, June and December 1985); 137-38 (chronic persistent back and bilateral leg pain, July 29, 1985).

[61] R. 99-102; 238-41.

[62] SSR 96-7p.

> individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[63]

The ALJ found that Franklin was not credible in her testimony of pain and the effects that it had on her because he considered that her activities of daily living did not support her pain assertions, and because her memory of events twenty years ago, in the late 1980's, was not as specific as the ALJ thought it should be. The ALJ dedicated a major portion of his decision to the analysis of records and testimony from 1987-1989, the three years leading up to Franklin's date last insured.[64] The ALJ remarked that he did not believe that Franklin could remember many details from those years to substantiate her asserted memories.[65] However, the record contains several evaluations and statements from 1982-1987 that show Franklin's pain, and the effects that it had on her functioning. Furthermore, the ALJ should have considered the *entire record* of evaluations and pain treatment- not just focusing on these few years - to evaluate the claimant's

---

[63]*Id.*

[64]R. 21.

[65]*Id.*

statements.[66]  The ALJ simply did not consider the entire record and evaluate Franklin's testimony under all seven of the relevant factors as required under the ruling.

### 4.     Impairments Under Listing 1.04

Finally, Franklin argues that the ALJ erred in finding that her impairments did not meet or equal impairments under Listing 1.04(a).[67]  If her impairments meet or equal those symptoms in the listing, a finding of disability is required.[68]  In his decision, the ALJ noted that Franklin had raised the issue that she met or equaled Listing 1.04, but that the ALJ found that her assertion was inconsistent with the medical evidence and claimant's testimony.[69]  However, the ALJ failed to explain how he reached this decision or what medical evidence he relied upon that was inconsistent.  Once again, this finding is suspect due to the ALJ's rejection of the opinions of the treating and/or examining physicians and his discounting of Franklin's testimony.  If the testimony and opinions of the treating and examining doctors had been assessed under the correct legal principles, the outcome on this finding may have been different.

---

[66] SSR 96-7p ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record . . .").

[67] 20 C.F.R. Part 404, Subpart P. Appendix 1 § 1.04(a) states:

> ***Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of
>
> motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

[68] 20 C.F.R § 404.1520(d)

[69] R. 19.

### 5.     Reverse and Remand for an Award of Benefits

Franklin requests that the court reverse and remand for an immediate award of benefits. The court is permitted to award benefits without a rehearing.[70] Some of the relevant factors to be considered are the length of time the matter has been pending,[71] and whether or not "'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'"[72]

In this case, a remand for further hearings appears futile. Franklin originally filed for benefits in January 1991 and more than eighteen years have passed since she filed her application. In that time, her case has been reviewed multiple times and she has appeared for three hearings because the ALJ's decision has been remanded for various errors each time.[73] The passage of time multiplies the problems with this case - memories of events fade and medical records are lost or misplaced. The workers' compensation carrier determined that she was permanently disabled years ago. The record contains volumes of medical treatment records for

---

[70] *See* 42 U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing."); *Salazar v. Barnhart,* 468 F.3d 615 (10th Cir. 2006) (remand for award of benefits after ALJ failed to properly consider diagnosis of borderline personality disorder); *Thaete v. Shalala,* 826 F.Supp. 1250 (D.Colo 1993) (reversing and remanding for an award of benefits after ALJ refused to properly consider the claimant's diagnosis of chronic fatigue syndrome, claiming that it was not based on "significant medical findings"); and *Cohen v. Secretary,* 964 F.2d 524(6th Cir. 1992) (reversing and remanding for an award of benefits after ALJ refused to give proper consideration to claimant's diagnosis of chronic fatigue syndrome).

[71] *Salazar*, 468 F.3d at 626 (citing *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993)).

[72] *Id.* (quoting *Harris v. Sec'y of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir. 1987)).

[73] "The Secretary is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" *Sisco,* 10 F.3d at 746 (quoting *Thaete,* 826 F.Supp. at 1252 (citing *Sanders v. Secretary of Health and Human Services,* 649 F.Supp. 71, 73 (N.D.Ala.1986))).

more than twenty years showing that Franklin continues to suffer from chronic, degenerative, disabling back pain and that she has never been released by one of her treating or examining physicians to return to full-time employment. Because this matter has been pending for over eighteen years, and the ALJ's fact-finding continues to be deficient, it does not appear that a "remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits."[74]

In the alternative, should the District Court determine that a remand is necessary to permit additional fact-finding and the application of correct legal standards, the court should remand with instructions that a different ALJ handle the matter. The ALJ that conducted Franklin's last two hearings had previously been instructed by *Adamson v. Chater* and the Appeals Council to properly consider the opinions of treating source opinions and explain the weight given to each opinion.[75] The ALJ did not carry out this obligation in either decision he issued.

## RECOMMENDATION

IT IS RECOMMENDED that this case be reversed and remanded because the ALJ failed to follow the instructions on remand by the Appeals Council. Further, the ALJ failed to properly develop the record and weight the opinions of the treating sources and the testimony of the claimant. The insufficient analysis of the treating physicians' opinions lead to continued errors in the determination process at Steps Two, Three, and Four. Because the ALJ has continued to error in weighing the opinions of treating physicians on each previous remand, IT IS FURTHER

---

[74]*Salazar*, 468 F.3d at 626.

[75]R. 4-6.

RECOMMENDED that the District Court remand with instructions for an immediate award of benefits.

In the alternative, should the District Court determine that another remand is necessary, the case should be remanded with instructions for a different ALJ handle the case.

## NOTICE

Within 10 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections.[76] A party may respond to another party's objections within 10 days after being served with a copy thereof. The rules provide that the district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject or modify the recommended decision, receive further evidence, or re-commit the matter to the magistrate judge with instructions.

August 19, 2009.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[76] *See* 28 U.S.C. § 636(b)(1)(B).